COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Frank and Kelsey
Argued at Chesapeake, Virginia


ANTONIO WILSON, JR.
                                    MEMORANDUM OPINION[*] BY
v.   Record No. 0085-02-1           JUDGE D. ARTHUR KELSEY
                                          APRIL 22, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                      Joseph A. Leafe, Judge

         Harry Dennis Harmon, Jr., for appellant.

         H. Elizabeth Shaffer, Assistant Attorney
         General (Jerry W. Kilgore, Attorney General,
         on brief), for appellee.


     Antonio Wilson, Jr. appeals his conviction for disorderly

conduct.  He argues that, despite inconsistent language in the

final order, the trial court convicted him under Norfolk City Code

§ 29-10 rather than Va. Code § 18.2-415.  And under the municipal

ordinance, Wilson contends, the evidence was insufficient to

support a conviction.  We agree with Wilson's first point, but not

his second.  As a result, we affirm the conviction and remand the

case to the trial court to amend its final order to reflect a

conviction under Norfolk Code § 29-10.

---

     * Pursuant to Code § 17.1-413, this opinion is not designated
for publication.

I.

On appeal, we review the evidence "in the light most favorable to the Commonwealth." Morrisette v. Commonwealth, 264 Va. 386, 389, 569 S.E.2d 47, 50 (2002). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Holsapple v. Commonwealth, 39 Va. App. 522, 528, 574 S.E.2d 756, 758-59 (2003) (en banc) (citation omitted); see also Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). We view the facts of this case, therefore, through this evidentiary prism.

On October 18, 2001, Officer F.M. Jackson of the City of Norfolk Police Department responded to a loud noise complaint at 1703 West Kenmore Street in Norfolk. When Jackson arrived at the house, Antonio Wilson and several other people were standing outside. Jackson approached the group, and someone "questioned the officer because no music was playing." As Jackson began explaining how the noise ordinance worked, Wilson and his mother became "increasingly loud and belligerent," protesting that the "radio was too small to be loud." Wilson then "attempted to leave." Throughout the encounter, Wilson and his mother were "continually talking over the officer." As a result, Jackson decided "to issue summonses" and asked Wilson for identification.

-

As Wilson and Jackson walked around the residence to obtain Wilson's identification, they encountered Wilson's younger brother, who "became very disorderly." Wilson shouted at Jackson, "If you don't leave my little brother alone, there's gone be [sic] a homicide." At that point, Jackson placed Wilson under arrest for violating Norfolk's disorderly conduct ordinance. The summons states that Wilson violated "city . . . law section 29-10." The general district court found Wilson guilty of disorderly conduct under Norfolk Code § 29-10. Wilson appealed to the circuit court seeking a trial de novo. The City attorney, not the Commonwealth attorney, prosecuted the case. In his closing arguments, the prosecutor argued that Wilson "was guilty of disorderly conduct, a violation of Norfolk Code § 29-10." The circuit court agreed and entered a conviction order. The final order, a preprinted form used for misdemeanor appeals, includes a notation, "( ) S.C. (X) C.C.," indicating a conviction under the city code rather than the state code. The same order, however, identifies the relevant "code section" as "18.2-415" — a reference to the analogous state statute governing disorderly conduct.

## II.

### A.

A trial court "speaks through its orders and those orders are presumed to accurately reflect what transpired" at trial.

-

Rose v. Commonwealth, 37 Va. App. 728, 734, 561 S.E.2d 46, 49 (2002) (quoting McBride v. Commonwealth, 24 Va. App. 30, 35, 480 S.E.2d 126, 128 (1997)). This rebuttable presumption applies even when "an order conflicts with a transcript of related proceedings." Martilla v. Commonwealth, 33 Va. App. 592, 598, 535 S.E.2d 693, 696 (2000). Even so, "we are not restricted to the precise, technical wording of a court's order when other evidence in the record clearly establishes that the court had a different intent." McBride, 24 Va. App. at 36, 480 S.E.2d at 129 (citing Guba v. Commonwealth, 9 Va. App. 114, 118, 383 S.E.2d 764, 767 (1989)). "The burden is on the party alleging an irregularity in a court proceeding to show affirmatively from the record that the irregularity exists." Howerton v. Commonwealth, 36 Va. App. 205, 212, 548 S.E.2d 914, 917 (2001).

In this case, we disagree with the Commonwealth that the presumption of correctness clearly favors an interpretation that the conviction rested on the state statute. Read together, the information on the final order states that the trial judge entered the conviction under "Code Section: 18.2-415" of the "C.C." (city code). This textual incongruity makes it difficult, if not impossible, to apply the presumption of correctness with any measure of certitude. To be sure, the rebuttable presumption itself presumes that when the trial court "speaks through its orders," Rose, 37 Va. App. at 734, 561 S.E.2d at 49, it speaks with one voice.

-

Because the face of the final order includes a patent, internal inconsistency, we look to the record as a whole to discern the trial court's true intent. Taken together, the summons issued by Officer Jackson, the general district court's conviction based upon that summons, the presence of the City attorney as the prosecutor in the circuit court, the prosecutor's sole reliance in circuit court on the ordinance (as summarized in the statement of facts signed by the circuit court judge) — coupled with the circuit court's "(X) C.C." notation on its final conviction order — all reflect an intent to convict Wilson under Norfolk Code § 29-10 rather than Va. Code § 18.2-415. We agree with Wilson that the record "clearly establishes" this to be the trial court's true intent. McBride, 24 Va. App. at 36, 480 S.E.2d at 129.

B.

When faced with a challenge to the sufficiency of the evidence, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (citations omitted); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc).

When a jury decides the case, Code § 8.01-680 requires that "we review the jury's decision to see if reasonable jurors could

-

have made the choices that the jury did make."  Pease v.

Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (en

banc).  "We let the decision stand unless we conclude no rational

juror could have reached that decision."  Id.  The same standard

applies when a trial judge sits as the fact finder because "the

court's judgment is accorded the same weight as a jury verdict."

Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907

(2001).[1]

In other words, when faced with a challenge to the

sufficiency of the evidence, a reviewing court does not "ask

itself whether it believes that the evidence at the trial

established guilt beyond a reasonable doubt."  Jackson v.

Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and

citation omitted).  Instead, the relevant question is whether

"any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."  Id. at 319

(emphasis in original).  This deference applies not only to the

historical facts themselves, but the inferences from those facts

as well.  "The inferences to be drawn from proven facts, so long

as they are reasonable, are within the province of the trier of

---

[1] Unless the fact finder acted unreasonably, we consider it
our duty not to "substitute our judgment for that of the trier
of fact, even were our opinion to differ."  Wactor, 38 Va. App.
at 380, 564 S.E.2d at 162 (citing Commonwealth v. Presley, 256
Va. 465, 466, 507 S.E.2d 72, 72 (1998)); see also Pease, 39
Va. App. at 355, 573 S.E.2d at 278; Harris v. Commonwealth, 38
Va. App. 680, 691, 568 S.E.2d 385, 390 (2002).

-

fact." Hancock v. Commonwealth, 12 Va. App. 774, 783, 407

S.E.2d 301, 306 (1991).

Wilson argues that his conduct, as a matter of law, did not

violate Norfolk's disorderly conduct ordinance. We disagree.

Norfolk Code § 29-10(1) provides:

> A person is guilty of disorderly conduct if,
> with the intent to cause public
> inconvenience, annoyance or alarm or
> recklessly creating a risk thereof, he:
>
> (1) Engages in fighting or in violent,
>     threatening, or tumultuous behavior[.]

Viewed in the light most favorable to the Commonwealth, the

evidence supports the trial court's conclusion that Wilson

violated Norfolk Code § 29-10(1). The prosecutor argued, and

the trial court agreed, that the evidence showed that Wilson

exhibited "tumultuous and threatening behavior, as it escalated

from his first encounter with the officer, increasing in volume,

talking over the officer, becoming belligerent, and culminating

into an actual verbal threat of violence."[2] The "verbal threat

of violence" occurred when Wilson shouted at Officer Jackson:

"If you don't leave my little brother alone, there's gone be

[sic] a homicide."

-------

[2] Because the trial court's statement of facts addresses
Wilson's criminal liability only under subsection (1), we limit
our analysis of the sufficiency of the evidence to this
provision. As a result, we need not address whether Wilson's
conduct also violated other subsections of Norfolk Code § 29-10.

-

Wilson argues that he did not intend his remark to suggest he would kill Officer Jackson, but that Wilson's brother might do so. Wilson took the witness stand and gave this interpretation of his remarks to the trial court. Under Virginia law, however, "whenever a witness testifies, his or her credibility becomes an issue." Hughes v. Commonwealth, 39 Va. App. 448, 462, 573 S.E.2d 324, 330 (2002) (citation omitted). "Great deference must be given to the factfinder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1998) (citation omitted). Consequently, the trial judge was at liberty to discount Wilson's self-serving explanation as a mere effort at "lying to conceal his guilt." Shackleford, 262 Va. at 209, 547 S.E.2d at 907; Pease, 39 Va. App. at 357, 573 S.E.2d at 279.[3]

That said, we agree with our dissenting colleague that a trial court cannot "arbitrarily" choose, as between two equally plausible interpretations, one that incriminates the defendant. Post, at 14 (citing Corbett v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969)). This axiomatic proposition, however, has meaning only after the fact finder "resolves all conflicts in the

---

[3] See also Dowden v. Commonwealth, 260 Va. 459, 469, 536 S.E.2d 437, 442 (2000); Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981); Mughrabi v. Commonwealth, 38 Va. App. 538, 548, 567 S.E.2d 542, 546 (2002); Morrison v. Commonwealth, 37 Va. App. 273, 284, 557 S.E.2d 724, 730 (2002).

-

evidence."  Feigley v. Commonwealth, 16 Va. App. 717, 724, 432
S.E.2d 520, 525 (1993).  If, after doing so, the evidence of guilt
or innocence remains in equipoise ── that is, the facts are
"equally susceptible to two or more constructions," id. ── then
reasonable doubt exists as a matter of law.

Here, the trial judge examined Wilson's demeanor, assessed
the veracity of his testimony, and rejected it as untruthful.  No
doubt the trial judge came to this conclusion after considering
Wilson's escalating belligerence toward Officer Jackson before the
threat and the implausibly convenient explanation given by Wilson
of his remark ── one that, under the circumstances, any reasonable
officer would have understood to be a direct threat by the
belligerent, not an earnest expression of concern for the personal
safety of the officer.  Far from being arbitrary, the trial judge
did what jurists and juries have done for centuries.  To be sure,
much of our jurisprudence relies on the aptitude of fact finders
to make just these types of judgment calls.

Finally, Wilson argues that there is insufficient evidence to
prove that his disorderly conduct occurred in public.  Norfolk
Code § 29-10, among other things, forbids threatening or
tumultuous behavior that causes "public inconvenience, annoyance
or alarm or recklessly creating a risk thereof."  (Emphasis
added).  Under this ordinance,

> "public" shall include, but not be limited
> to affecting or likely to affect persons in
> a neighborhood, highway, street, hospital,

-

                    jail or other institution, apartment house,
                    office building, public conveyance, shop,
                    public building or other place to which the
                    public or a substantial group has access.

Norfolk Code § 29-10.  Wilson's behavior during the initial

encounter with Officer Jackson involved overt belligerence outside

Wilson's home in the presence of "several others" in the

neighborhood.  Wilson made his "there's gone be [sic] a homicide"

threat in his brother's presence after the officer had accompanied

Wilson "to and around the residence."  Given these facts, the

trial court reasonably could find that Wilson's conduct recklessly

created a risk of "inconvenience, annoyance or alarm" for the

officer, Wilson's brother, and other members of the public outside

the residence.

                              III.

     In sum, we agree with Wilson that his conviction should be

treated as one for disorderly conduct in violation of the Norfolk

ordinance.  We remand this case to the trial court to amend its

final order to reflect a conviction under Norfolk Code § 29-10(1)

and to delete any inconsistent references to the Virginia Code.

We reject, however, Wilson's challenge to the sufficiency of the

evidence.  Sufficient evidence exists to support a conviction

under Norfolk Code § 29-10(1).

                                        Affirmed and remanded.

                               -

Benton, J., concurring, in part, and dissenting, in part.

I concur in Parts I and IIA.  For the reasons that follow, I dissent from Part IIB.

Wilson contends his comments did not violate the proscriptions of Norfolk Code § 29-10.  The Commonwealth argues in response that Wilson threatened to kill Officer Jackson when he said, "If you don't leave my little brother alone, there's gone [sic] be a homicide" and that this "conduct had a 'direct tendency to cause acts of violence by' Officer Jackson."  The Commonwealth also argues that when Wilson made this verbal exclamation other people had become "increasingly loud and belligerent" and Wilson's brother was visibly upset as well.  The trial judge convicted Wilson of disorderly conduct without any explanation or findings.

In pertinent part, Norfolk Code § 29-10 provides as follows:

> A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, threatening or tumultuous behavior; or . . . (4) Otherwise creates a hazardous or physically offensive condition by any act, which serves no legitimate purpose of the actor; or (5) In any street, highway, public building, or while in or on a public conveyance, or public place engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom individually, such conduct is directed . . . .  However, the conduct prohibited under paragraphs (5), (6) and (7) of this section shall not be deemed to include the utterance or display of any words or to include conduct otherwise made punishable under this Code.

-

"'[W]hen the question of sufficiency of the evidence is raised on appellate review, we must determine whether a reasonable fact finder could have found from the evidence before it that guilt had been proved beyond a reasonable doubt.'" McBride v. Commonwealth, 24 Va. App. 30, 34, 480 S.E.2d 126, 128 (1997) (citation omitted).  In accord with the usual standard on review of the sufficiency of the evidence, "'we must view the evidence in the light most favorable to the Commonwealth, granting all reasonable inferences fairly deductible from the evidence.'"  Id.

Seen in the light most favorable to the Commonwealth, the evidence does not prove a violation of Norfolk Code § 29-10.  That ordinance specifies seven distinct conducts that are prohibited if accompanied "with the intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof."  Norfolk Code § 29-10.  Of the seven, only two are applicable to the circumstances in this case.  Paragraph (1) of the ordinance prohibits "threatening or tumultuous behavior," and paragraph (5) prohibits "conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed."

According to the statement of facts, when the officer explained the noise ordinance, Wilson and his mother protested the officer's claim that the music was loud.  The officer testified "[i]t was at this point . . . he decided to issue

-

summonses" and asked Wilson for identification.  The officer, however, did not indicate whether he was then issuing a summons for disorderly conduct or violating the noise ordinance.  Furthermore, the evidence does not establish that Wilson had an intent, at this point, other than to refute the officer's accusation concerning the noise.

The record indicates Wilson's statement about homicide occurred after the officer made the decision to issue summonses.  Wilson's statement was subject to multiple interpretations; therefore, it is impossible to reasonably conclude on this sparse record that Wilson was threatening the officer.

> This language is susceptible of more than one interpretation.  Certainly it may reasonably be interpreted as consistent with a lawful purpose.  And "where a fact is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates him."

Corbett v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969) (citation omitted).

The officer testified that he remembered Wilson's "brother appearing during the incident" and being "upset."  The officer's testimony, as summarized in the statement of facts, provides no other indication of the circumstances.  The contemporaneity of Wilson's statement and the appearance of his agitated brother tend to support Wilson's testimony that his statement was only meant to be a warning.  In any event, the officer's testimony is

-

not inconsistent with Wilson's testimony.  Furthermore, Wilson did not say he would commit the homicide.  The Commonwealth's evidence, therefore, failed to prove acts, words or conduct from which a reasonable fact finder could infer beyond a reasonable doubt that Wilson threatened the officer or committed tumultuous behavior.

The record also contains insufficient evidence to prove beyond a reasonable doubt that Wilson violated paragraph (5) of the ordinance by engaging in conduct that has a direct tendency to cause acts of violence by the officer.  By the express language of the statute, the conduct proscribed by paragraph (5) "shall not be deemed to include the utterance or display of any words or to include conducts otherwise made punishable under [the Code]."  Norfolk Code § 29-10.  The Commonwealth argues that when Wilson's statement was compounded by the fact that other people were present when the officer issued the summons, "[a]ny reasonable police officer in that situation would consider responding with physical force to prevent the threatened assault."  The record does not support this conclusion.

Evidence in the record proved that Wilson and his mother protested that "the radio was too small to be loud."  After Wilson continually talked over the officer in a "loud and belligerent" manner, the officer then decided to "issue summonses."  We have held that these circumstances are not

-

enough to prove inciting an officer to violence. See Ford v. Commonwealth, 23 Va. App. 137, 144, 474 S.E.2d 848, 851 (1996) (holding that persistent protestations of treatment that lack civility are impolite and loud but are not sufficient to establish disorderly conduct). The evidence viewed as a whole simply does not prove Wilson violated the Norfolk Code prohibitions.

For these reasons, I would reverse the conviction.