## Richmond

LINWOOD CORBETT V. COMMONWEALTH OF VIRGINIA.

December 1, 1969.

Record No. 7258.

Present, All the Justices.

*Robert E. Shepherd, Jr.,* for plaintiff in error.

*M. Harris Parker, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

SNEAD, C.J., delivered the opinion of the court.

Appellant, Linwood Corbett, on a plea of not guilty, was tried by the court without the intervention of a jury and convicted on a warrant charging that he did "unlawfully assemble without authority of law and for the purpose of disturbing the peace and exciting alarm or disorder" under Code, § 18.1-254.1(c).[1] His punishment was

---

[1] "§ 18.1-254.1. What constitutes riot, rout or unlawful assembly.—As used in this article:

\* \* \* \* \* \*

"(c) Whenever three or more persons assemble with the common intent or with means and preparations to do an unlawful act which would be riot if actually committed, but do not act toward the commission thereof, or whenever three or more persons assemble without authority of law and for the purpose of disturbing the peace or exciting public alarm or disorder, such assembly is an unlawful assembly."

fixed at a fine of twenty-five dollars and imposition of further sentence was suspended during good behavior for twelve months. To this judgment we granted Corbett a writ of error.

On April 7, 1968 the City of Richmond experienced a series of civil disorders in the wake of Martin Luther King's assassination, in Memphis, Tennessee, several days before. The record shows that on April 7 at about 1:15 a.m. a large crowd of Negroes had congregated at Third and Broad streets in Richmond. Responding to a radio call indicating that the window of a bank at Third and Broad had been smashed, Officers Bogart and Shook of the Richmond Police Department arrived at the scene in a police car. The officers testified that they observed Appellant standing on an upturned trash can waving his hands and addressing the crowd. The group was "noisy", some of its members were "screaming and hollering" and "jumping up and down" but some others appeared to be trying to listen to Corbett.

The officers testified that as they drove up they heard Corbett say to the crowd "We'll be back again tomorrow night bigger and stronger". Officer Shook took Corbett by the arm, motioning for him to get down, and as he led him to the police car Corbett said, "But all I ask for is a peaceful demonstration". Shook presumed that this statement was "directed to the crowd", but he "felt like" it was meant for him.

The officers testified that they heard nothing of what Corbett said to the crowd before the statement "We'll be back again tomorrow night bigger and stronger"; that he had no weapon and that they did not see him break any windows or anything of that nature.

Corbett testified that he was employed at the Greyhound Bus Terminal and was at work there on the night in question. Sometime after midnight he saw from the front door of the bus station a commotion at Fourth and Broad streets. He went to the scene of the disturbance and observed a large man confronting a police officer and a dog. The officer and the man "was going at it, the officer was siccing his dog on him." Corbett stated he grabbed the man and attempted to get him away from the officer, and with the help of some others was able to restrain the man. This testimony was corroborated by Barry Barkan, a newspaper reporter who stated that he observed the incident.

At that point, according to Corbett, he led the man and the crowd that had gathered, to the opposite end of the block from the police-

man. Corbett then climbed onto the trash can and spoke to the crowd with the intention of exhorting the people there to demonstrate in a more orderly manner. "I got up with a desire * * * in my heart to try to do something constructive, not destructive, my only intentions were to tell the people if you are going to be here * * * demonstrate in a more orderly manner * * *".

In his assignments of error Corbett attacks the sufficiency of the evidence to sustain his conviction and the constitutionality of that portion of § 18.1-254.1(c) upon which the charge in the warrant is based.

"When the sufficiency of the evidence is challenged after conviction it is our duty to view it in the light most favorable to the Commonwealth, granting all reasonable inferences fairly deducible therefrom. The judgment should be affirmed unless 'it appears from the evidence that such judgment is plainly wrong or without evidence to support it'. § 8-491, Code, 1950; *Toler* v. *Commonwealth*, 188 Va. 774, 781, 51 S.E.(2d) 210, 213; *Wright* v. *Commonwealth*, 196 Va. 132, 137, 82 S.E.(2d) 603, 606." *Crisman* v. *Commonwealth*, 197 Va. 17, 18, 87 S.E. 2d 796, 797 (1955).

Viewed in this light the evidence shows the existence of a "noisy" crowd of between thirty-five and fifty persons congregated on a downtown street corner at about one o'clock in the morning at a time when the immediate area had suffered disturbances and property damage. Appellant was in the crowd, standing on an overturned trash can addressing the people there and gesticulating. The officers heard him say "We'll be back again tomorrow night bigger and stronger" and later "but all I ask for is a peaceful demonstration."

The burden is upon the Commonwealth to prove guilt beyond a reasonable doubt. *Warren* v. *Commonwealth*, 144 Va. 669, 675, 131 S.E. 227, 228 (1926). Every element of the crime must be so proved. *Burton and Conquest* v. *Commonwealth*, 108 Va. 892, 898, 62 S.E. 376, 379 (1908). And every reasonable hypothesis consistent with the innocence of the accused must be excluded by the Commonwealth. *Spicer* v. *Commonwealth*, 156 Va. 971, 973, 157 S.E. 566 (1931).

In the case at bar, the Commonwealth's evidence, as it relates to Corbett, identifies him as present at the scene and part of the assembly at the time he was arrested. However, there was no evidence, other than his own, of what Corbett's purpose was as he addressed the crowd. "We'll be back again tomorrow night bigger and stronger"

and "but all I ask for is a peaceful demonstration" is all that the officers heard Corbett say. This language is susceptible of more than one interpretation. Certainly it may reasonably be interpreted as consistent with a lawful purpose. And "where a fact is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates him". *Burton and Conquest* v. *Commonwealth, supra*, at 899, 62 S.E. 376, 379.

Upon a consideration of the record before us we find that, as a matter of law, the evidence is insufficient to establish that Corbett did unlawfully "assemble without authority of law and for the purpose of disturbing the peace or exciting public alarm or disorder" as charged in the warrant.

In view of this conclusion, it is unnecessary to determine whether the challenged portion of § 18.1-254.1(c) is unconstitutional. *Bissell* v. *Commonwealth*, 199 Va. 397, 400, 100 S.E.2d 1, 3 (1957).

The judgment appealed from is reversed and the warrant is dismissed.

*Reversed and dismissed.*

HARRISON, J., dissenting.

I dissent from the holding of the majority that as a matter of law the evidence is insufficient to establish that Corbett did unlawfully "assemble without authority of law and for the purpose of disturbing the peace or exciting public alarm or disorder."

After midnight on April 7, 1968, crowds were roaming the streets of downtown Richmond and "had smashed many windows, were running wild, had overturned a vehicle and were just jumping up and down screaming and hollering."

The defendant was a part of a group of approximately 50 in front of a bank at Third and Broad Streets, where a window had been smashed and trash cans overturned. This group was noisy, shouting and screaming. The downtown area was described as very much out of control at that time. It was in this setting that the defendant, standing on an overturned trash can, said to the crowd, "We'll be back again tomorrow night bigger and stronger". True, after being arrested and prior to being lodged in the patrol wagon, he said, "But all I ask for is a peaceful demonstration".

The trier of the facts had the responsibility of weighing the evidence. He had a right to believe a portion of defendant's state-

ment and reject the balance. The court evidently determined that defendant's statement to the crowd was one of encouragement to return the next night in sufficient numbers to do greater damage and cause more disruption, and that his statement to the officers was a self-serving one made to alleviate the impact of his inflammatory remark to the crowd.

Certainly the yelling, cursing, swirling group, of which defendant was a part and a spokesman, which was engaged in overturning automobiles, breaking windows and interfering with traffic, was a group that had assembled without authority of law and manifestly had as its purpose disturbing the peace or exciting public alarm or disorder. The evidence shows that they succeeded.