COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley, Petty,
   Beales, Powell and Senior Judge Clements[*]
Argued at Richmond, Virginia


KENNETH ANTHONY CLANTON

                OPINION BY
v.  Record No. 1018-07-2    JUDGE ELIZABETH A. McCLANAHAN
                MARCH 17, 2009

COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Pamela S. Baskervill, Judge

James T. Maloney (Maloney & David, on brief), for appellant.

Jennifer C. Williamson, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


  Kenneth Anthony Clanton was convicted, in a bench trial, of abduction in violation of

Code § 18.2-47, and use of a firearm in the commission of abduction in violation of Code

§ 18.2-53.1. Clanton contends the evidence was insufficient to support his convictions. A panel

majority of this Court agreed and reversed the convictions. We granted a petition for rehearing

*en banc* and stayed the mandate of the panel decision. Upon rehearing *en banc*, we affirm the

trial court.

---

  [*] Judge Clements participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2008 and thereafter by her designation as a
senior judge pursuant to Code § 17.1-401.

I.  BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted). That principle requires us to "'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'"  Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)).  See also Bolden v. Commonwealth, 275 Va. 144, 147-48, 654 S.E.2d 584, 586 (2008); Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006); Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005); Walton v. Commonwealth, 255 Va. 422, 425-26, 497 S.E.2d 869, 871 (1998).

So viewed, the evidence proved Clanton was one of four armed intruders, three males and one female, who attempted to rob occupants of a home that Mike Mabry shared with his mother, his nephew, Debryant, and Debryant's infant daughter.  On the morning of the attempted robbery, two of the intruders knocked on the door and asked Mike if they could use his telephone claiming their vehicle was inoperable.  Mike retrieved the telephone and handed it to the female who purported to make a telephone call.  After Mike turned around to go into the kitchen, the male put a gun to the back of his head and told him to be quiet while two more males entered the home with guns.  The intruder holding the gun to Mike's head in the kitchen ordered him to lie on the floor, hit Mike in the head with the gun, and bound Mike's mouth, legs, and hands with duct tape.

While Mike remained bound by duct tape in the kitchen, the intruders ran throughout the house, with their guns drawn, demanding money.  They kicked down the door to a bedroom in

which Debryant, his infant daughter, and his girlfriend, Simone Lewis,[1] were sleeping. Debryant was pulled out of bed, shoved on the floor, bound in duct tape, and held at gunpoint while the intruders demanded money from him.

One intruder grabbed Simone, pulled her out of bed, shoved her down the hallway, and into another bedroom. The intruder who grabbed Simone continued to threaten her, hold her at gunpoint, and demand money. One intruder ordered Simone to turn over and then threw a blanket over Simone's head. Another bound Simone's hands and legs with duct tape.

At some point during the attempted robbery, one of the intruders grabbed Debryant's infant daughter out of his bed, brought the infant into the room in which Simone was being held, and threw the infant on a bed, telling Simone to "watch her." According to Simone, one of the intruders told her Debryant repeatedly said his daughter was "in here" before the infant was taken from Debryant's bed. Debryant did not ask or give permission to the intruders to take his daughter from him.

After approximately thirty minutes, Mike managed to break free from the duct tape and run next door to his cousin's house and then outside to the road in front of his house to seek help. By that time, the intruders were outside in his front yard and one of them fired two gunshots at Mike without hitting him before all four jumped into a vehicle fleeing the scene. Mike went back into his home, found Debryant and Simone, removed the duct tape from them, and called the police.

---

[1] Simone Lewis was not the infant's mother.

The trial court convicted Clanton of abduction of the infant and use of a firearm in the commission of the abduction.[2]

## II. ANALYSIS

When considering a challenge to the sufficiency of the evidence on appeal, a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original; citation and internal quotation marks omitted). Instead, we ask only "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson, 443 U.S. at 319) (emphasis in original). See also McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, ___ (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009). These principles recognize that an appellate court is "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004). This deferential standard of review "applies not only to the historical facts themselves, but the inferences from those facts as well." Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2, 588 S.E.2d 384, 387 n.2 (2003). Thus, a fact finder may "draw reasonable inferences from basic facts to ultimate facts," Haskins, 44 Va. App. at 10, 602 S.E.2d at 406 (citations omitted), unless doing so would push "into the realm of *non*

---

[2] Clanton was also convicted of three counts of attempted robbery and three counts of use of a firearm in the commission of attempted robbery. Those convictions are not before us on appeal.

*sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted).

## A. Abduction Conviction

Clanton argues the evidence was insufficient to support his conviction for abduction because (1) the infant was taken for her own protection, not with a wrongful intent, and (2) there was no evidence the infant was taken by force, intimidation or deceit.

The trial court found Clanton guilty of abduction in violation of Code § 18.2-47, which provides in relevant part:

> A. Any person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction" . . . .

"This codification wholly 'supercedes the common law' and effectively combines the common law offenses of kidnapping, abduction, and false imprisonment 'into one statutory felony.'" Walker v. Commonwealth, 47 Va. App. 114, 120, 622 S.E.2d 282, 285 (2005) (quoting John L. Costello, Virginia Criminal Law & Procedure § 7.1, at 119-20 (3d ed. 2002)), aff'd, 272 Va. 511, 636 S.E.2d 476 (2006). A conviction under the abduction statute "requires only a showing of 'physical detention of a person, with the intent to deprive him of his personal liberty, by force, intimidation, or deception,' without more." Id. (quoting Scott v. Commonwealth, 228 Va. 519, 526, 323 S.E.2d 572, 576 (1984)).

## 1. Wrongful Intent

Clanton argues the Commonwealth failed to prove abduction because "the movement of the child was at the request of the parents and for the child's own protection rather than for a wrongful purpose."

The Commonwealth was required to prove the infant was seized or taken "with the intent to deprive [her] of [her] personal liberty or to withhold or conceal [her] from any person, authority or institution lawfully entitled to [her] charge." Code § 18.2-47. Although Clanton argues the infant was not taken with a wrongful intent, the trial court found the evidence proved "a seizure or asportation with intent to deprive [such] other person of personal liberty or to withhold him from any person lawfully entitled to his charge." Since the infant was in fact taken from Debryant, her father and the person lawfully entitled to her charge, it was certainly reasonable for the trial court to conclude Clanton intended to do precisely what he did – withhold the infant from the person lawfully entitled to her charge.[3] Walker, 47 Va. App. at 121, 622 S.E.2d at 286 (fact finder could infer defendant intended to detain victim because that is exactly what defendant did); see also Scott, 228 Va. at 524, 323 S.E.2d at 575 (evidence of intent sufficient for conviction of abduction where defendant intended to make victim sit on the couch long enough for her to watch him kill himself ); Joyce v. Commonwealth, 210 Va. 272, 170 S.E.2d 9 (1969) (depriving occupants of a house of personal liberty, at gunpoint, to detain them satisfied intent requirement of abduction statute).[4] Clanton intended the natural and probable

---

[3] While Clanton points out the infant was simply moved from one room to another, the distance the infant was moved, and indeed, the very fact she was moved, has no bearing on whether she was abducted since asportation is no longer required under the abduction statute. Scott, 228 Va. at 526, 323 S.E.2d at 576; Walker, 47 Va. App. at 120, 622 S.E.2d at 285 ("The statutory language specifically refers to seizure, secreting, and detention--acts which 'do not necessarily involve movement.'" (quoting Roger D. Groot, Criminal Offenses & Defenses in Virginia at 2-3 (5th ed. 2005))). The infant was clearly seized, taken, and withheld from her father.

[4] The seizure or taking of an individual may be legally justified and thus not a violation of the abduction statute since the statute only prohibits a seizure or taking "without legal justification or excuse." Code § 18.2-47. "The word 'justification' simply means '[a] lawful or sufficient reason for one's acts or omissions;' it sometimes is referred to as the 'justification defense' or the 'necessity defense.'" Taylor v. Commonwealth, 260 Va. 683, 690, 537 S.E.2d 592, 596 (2000) (quoting Black's Law Dictionary 870 (7th ed. 1999)). Clanton did not argue the affirmative defense of legal justification at trial or on appeal. And the defense is only applicable

consequences of his acts. Velasquez v. Commonwealth, 276 Va. 326, 330, 661 S.E.2d 454, 456 (2008); Schmitt v. Commonwealth, 262 Va. 127, 145, 547 S.E.2d 186, 198 (2001). The question of whether Clanton possessed this intent rested with the trial court, as the finder of fact, Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977), and we find there was credible evidence to support the trial court's finding in this regard.

Clanton contends there was no wrongful intent because the infant was moved to a safer environment[5] at the request of her parents. The record is clear, though, that Debryant, the child's father, did not ask the assailants to take his daughter away and did not give the assailants permission to do so. We decline Clanton's invitation to find an "implicit" request to move his daughter away from him since we are bound by our standard of review, which requires us to view the evidence in the "light most favorable" to the Commonwealth, Hudson, 265 Va. at 514, 578 S.E.2d at 786.[6] To the extent an inference can be made from Debryant's statement that his

---

when the defendant takes action to avoid threatened harm beyond his control and there is no reasonable, legal alternative to taking such action (a chance to refuse to do the criminal act and avoid the harm). Buckley v. City of Falls Church, 7 Va. App. 32, 33-34, 371 S.E.2d 827, 827-28 (1988). In this instance, Clanton created the very harm in which the infant was placed and had a reasonable, legal alternative to abducting her, which was to simply leave the premises.

[5] We reject the notion that the spare bedroom to which the infant was taken was a safer environment. During the entire incident, the intruders were running through the house, guns drawn, demanding money, and making threats. The state of disarray was not confined to Debryant's room but "stuff was everywhere" in the house. Mike remained bound in the kitchen for thirty minutes before he escaped. Simone was in such fear she thought she was going to die and was hardly in a position to "watch" the infant with her arms and legs bound by duct tape and her head covered by a blanket.

[6] In considering an appellant's alternate hypothesis of innocence in a circumstantial evidence case, we must determine "not whether there is some evidence to support" the appellant's hypothesis of innocence, but, rather, "whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt."

daughter was "in here," the more reasonable one is that he wanted the intruders to leave, not take his daughter away so they could continue unhindered with their attempted robbery of him.[7]

Even if we accepted Clanton's argument that the infant was moved to a safer environment, the fact remains that the infant was moved for the purpose of facilitating the accomplishment of the ongoing armed robbery. Although Clanton acknowledges the evidence permitted conflicting inferences regarding his intent, he points out that the trial court made no express finding that the purpose of taking the infant was to facilitate the robbery rather than safeguard the infant. But

> when "faced with a record of historical facts that supports conflicting inferences" a court reviewing the sufficiency of the evidence "must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

Harper v. Commonwealth, 49 Va. App. 517, 523, 642 S.E.2d 779, 782 (2007) (quoting Jackson, 443 U.S. at 326). Accordingly, to the extent the evidence permitted conflicting inferences regarding the assailants' intent in taking the infant, we must presume the trial court resolved any such conflict in favor of the Commonwealth and found the intent was to facilitate the ongoing

---

Emerson v. Commonwealth, 43 Va. App. 263, 277, 595 S.E.2d 242, 249 (2004) (quoting Hudson, 265 Va. at 513, 578 S.E.2d at 785).

[7] Even if Debryant's concern for his daughter prompted Clanton to take her away, "as a matter of law, . . . one who, armed with a deadly weapon, approaches others intending to rob them, will not be heard to assert that he was provoked by the resistance of his victims to his criminal enterprise." Barnes v. Commonwealth, 234 Va. 130, 136, 360 S.E.2d 196, 200 (1987) (Court rejected defendant's argument that the Commonwealth failed to prove premeditation in the killings since he was provoked to shoot them when they resisted his robbery attempt); Swann v. Commonwealth, 247 Va. 222, 236, 441 S.E.2d 195, 205 (1994) (Court rejected defendant's claim that Commonwealth failed to prove premeditated murder where victim of robbery charged at him and he "didn't have any thing to do but shoot him"). Similarly, we reject any argument that Clanton was somehow provoked into taking Debryant's daughter or that Debryant's stated concern for his daughter negated Clanton's wrongful intent.

- 8 -

robbery.[8]  Any other conclusion would ignore the fact that had the assailants been concerned about the well-being of the infant, they could have aborted the robbery attempt and left the premises thereby eliminating the danger to the infant.

The Supreme Court of Virginia has held that "abducting a person as a means of gaining access to the scene or otherwise facilitating the commission of an intended robbery . . . violates the [statute proscribing abduction for pecuniary benefit]."  Barnes v. Commonwealth, 234 Va. 130, 137, 360 S.E.2d 196, 201 (1987).[9]  Thus, regardless of whether the infant was moved to a safer environment, she was taken away from her father, the person lawfully entitled to her charge, in order to facilitate the commission of the attempted robbery of him, in violation of the abduction statute.[10]

_____

[8] The dissent points out that circumstantial evidence must "exclude every reasonable hypothesis except that of guilt," Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983), and argues a reasonable hypothesis of innocence is that the assailants took the infant solely at her father's request and not to facilitate the robbery.  But, the trial judge resolved these evidentiary conflicts against appellant, drawing "'reasonable inferences from the basic facts to ultimate facts.'"  Pease v. Commonwealth, 39 Va. App. 342, 354, 573 S.E.2d 272, 278 (2002) (en banc) (quoting Jackson, 443 U.S. at 319), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003) (per curiam order adopting reasoning of the Court of Appeals).

[9] Code § 18.2-48 proscribes abduction with intent to extort money or for an immoral purpose, such as with the intent to defile, and thus requires a more specific mens rea (a more specific criminal intent above and beyond the general criminal intent to deprive a person of his liberty or withhold him from a person lawfully entitled to his charge) than Code § 18.2-47.  Since abduction of a person as a means to facilitate commission of a robbery violates Code § 18.2-48 (as found in Barnes), it would undoubtedly violate Code § 18.2-47, the general abduction statute.

[10] Clanton also argues that any detention or asportation of the infant was incidental to attempted robbery and thus barred by double jeopardy.

> [O]ne accused of abduction by detention and another crime
> involving restraint of the victim, both growing out of a continuing
> course of conduct, is subject upon conviction to separate penalties
> for separate offenses only when the detention committed in the act
> of abduction is separate and apart from, and not merely incidental
> to, the restraint employed in the commission of the other crime.

"In the end, [Clanton's argument] is little more than an invitation for us to interpret the inferences differently than the factfinder, to find all exculpatory inferences reasonable and all inculpatory inferences unreasonable . . . ." Haskins, 44 Va. App. at 11, 602 S.E.2d at 407. It must be kept in mind that "the reasonable-hypothesis principle is not a discrete rule unto itself." Id. at 8, 602 S.E.2d at 405. "'The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" Kelly, 41 Va. App. at 258, 584 S.E.2d at 447-48 (quoting Hudson, 265 Va. at 513, 578 S.E.2d at 785). This principle "does not add to the burden of proof placed upon the Commonwealth in a criminal case," id., but merely "reiterates the standard applicable to every criminal case." Pease v. Commonwealth, 39 Va. App. 342, 360, 573 S.E.2d 272, 280 (2002) (*en banc*) (citation and internal quotation marks omitted), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003) (*per curiam* order adopting reasoning of the Court of Appeals).

"Whether the hypothesis of innocence is reasonable is itself a 'question of fact,' Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004) (citation omitted), subject to deferential appellate review, Kelly, 41 Va. App. at 259, 584 S.E.2d at 448." Haskins, 44 Va. App. at 9, 602 S.E.2d at 406. "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with

Brown v. Commonwealth, 230 Va. 310, 314, 337 S.E.2d 711, 713-14 (1985). This doctrine has no application since Clanton was not charged with attempted robbery of the infant or any other crime involving restraint of the infant. See also Hoke v. Commonwealth, 237 Va. 303, 311, 377 S.E.2d 595, 600 (1989) (Court holding that under Brown, a defendant "cannot be subject to a separate penalty for conviction of abduction" in addition to the detention-plus crime); Walker, 47 Va. App. at 124, 622 S.E.2d at 287 (Court holding where defendant was convicted and punished only for abduction and acquitted of robbery, he could not be subject upon conviction to separate penalties); Bell v. Commonwealth, 22 Va. App. 93, 96, 468 S.E.2d 114, 115 (1996) (Court holding a "defendant may be convicted of abduction in addition to another crime involving restraint of the victim" only when the detention is separate and apart from the detention-plus crime (internal quotations and citation omitted)).

his innocence has not been excluded." Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964). "By finding the defendant guilty, therefore, the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" Haskins, 44 Va. App. at 9, 602 S.E.2d at 406 (quoting United States v. Kemble, 197 F.2d 316, 320 (3d Cir. 1952)).

While the dissent is correct that when the evidence is susceptible of two interpretations, the fact finder cannot *arbitrarily* adopt the one that incriminates the defendant, Corbett v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969), the fact finder's "determination cannot be overturned as *arbitrary* unless no rational factfinder would have come to that conclusion." Haskins, 44 Va. App. at 9, 602 S.E.2d at 406 (emphasis added). The evidence permitted conflicting inferences, including the inference that the assailants took the infant from her father solely at his request and not to facilitate the robbery. The trial court rejected this hypothesis as unreasonable, and we cannot conclude the fact finder arbitrarily chose one theory over another or that "no rational fact finder would have come to that conclusion." Id.

## 2. Force, Intimidation or Deceit

Clanton argues the Commonwealth failed to prove abduction because there was no evidence the infant was subjected to force, intimidation or deceit or that the infant comprehended the use of any such force, intimidation or deceit.[11]

The abduction statute, by its plain language, does not require that force, intimidation or deceit be directed at the person being seized or taken or that the person being seized or taken be aware of such conduct and resist it. Indeed, by prohibiting the use of force to withhold a person from another person entitled to his charge, the statute clearly envisions the situation in which a

---

[11] The only evidence regarding the infant's demeanor was that she was laughing and playing after being taken from her father's bed.

child or some other person incapable of resistance is taken or withheld from another. As the

Maryland Court of Special Appeals stated in response to an argument that an infant was not

forcibly taken,

> [i]f we were to follow appellant's reasoning to its logical end,
> children, incompetents, physically handicapped and the
> unconscious would not be protected by the statute if they did not
> resist in any manner or smiled as they were taken from their beds.
> It would ill serve the law to exclude as kidnappers those who prey
> on persons who cannot resist.

Stancil v. State, 553 A.2d 268, 273 (Md. Ct. Spec. App. 1989) (where three-week-old infant,

incapable of resistance, was carried out of a hospital without any assaultive conduct exhibited

toward the infant, state presented sufficient evidence of force). Likewise, we decline to limit the

application of the abduction statute to the taking or seizure of only those persons who can

comprehend such conduct and resist the taking.

Abduction "may be accomplished by a minimal amount of force and each case will

depend upon the particular facts of the taking." Id. at 272 (citation omitted). Debryant's

daughter was taken from his bed when four intruders stormed the house, demanded money,

bound Debryant by duct tape and held him at gunpoint. We find these facts support the

conclusion that the infant was taken by force, intimidation or deceit within the meaning of the

abduction statute.[12] See Wilson v. Commonwealth, 249 Va. 95, 103, 452 S.E.2d 669, 675

(1995) (defendant's initial act of forcing his female victims upstairs at gunpoint satisfied

elements of abduction statute); Walker, 47 Va. App. at 121, 622 S.E.2d at 285 (defendant used

force and intimidation within the meaning of the abduction statute by pointing a gun at victim

---

[12] Although force was clearly used against the father in this case, we do not mean to imply that force must always be used against the person lawfully entitled to another person's charge since there may be circumstances under which a child or other person is taken with only a minimal amount of force required against a person unable to resist as was the case in Stancil.

and manhandling him into a truck); <u>Simms v. Commonwealth</u>, 2 Va. App. 614, 618, 346 S.E.2d 734, 736 (1986) (where defendant grabbed a female victim, held a gun to her head, and threatened to shoot her, "abduction was established as a fact once the Commonwealth proved that [defendant] had deprived the victim of her liberty by threats of violence and use of force").

## B. Firearm Conviction

Clanton also contends the evidence was insufficient to support his conviction for use of a firearm in the commission of the abduction because there was no evidence a firearm was actually used or that the infant comprehended the use of any such firearm.

The trial court found Clanton guilty of violating Code § 18.2-53.1, which makes it "unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . abduction." The record clearly supports the trial court's conclusion that a firearm was used in the abduction of the infant since Debryant was threatened and held at gunpoint as his daughter was taken away from him. We find Clanton's argument regarding the infant's comprehension of the use of the firearm without merit for the same reason we find his argument regarding the infant's comprehension of the use of force without merit. Like the abduction statute, Code § 18.2-53.1, by its plain language, prohibits certain conduct (use of or attempt to use a firearm in the commission of a felony) without regard to the awareness of the victim. And we refuse to restrict application of Code § 18.2-53.1 only to situations in which the victim is aware of or able to comprehend the use of a firearm.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>

- 13 -

Elder, J., with whom Haley, J., joins, dissenting.

Because I believe the evidence as set out in the majority opinion fails to prove Clanton or any of his companions acted with the requisite intent to abduct the infant, I respectfully dissent.

As the majority recognizes, the Commonwealth was required to prove the infant "was seized or taken 'with the intent to deprive [her] of [her] personal liberty or to withhold or conceal [her] from any person, authority or institution lawfully entitled to [her] charge.' Code § 18.2-47." The intent required to support a conviction for this offense, as for any other, may be proved by circumstantial evidence. Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided [the evidence as a whole] is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). Whether a hypothesis of innocence is reasonable is a question of fact. Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988).

On appeal, we must set aside a ruling based on a fact finder's rejection of a hypothesis of innocence if we conclude as a matter of law, viewing the facts in the light most favorable to the Commonwealth, that the hypothesis of innocence was reasonable and that the fact finder's rejection of it was plainly wrong. Where the circumstantial evidence, viewed in the light most favorable to the Commonwealth, "'is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates him.'" Corbett v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969) (quoting Burton v. Commonwealth, 108 Va. 892, 899, 62 S.E. 376, 379 (1908)). Not only must the evidence be *consistent* with a finding that the accused acted with the intent required to support the charged crime; it must also exclude every reasonable hypothesis that the accused may have acted *only* with a *different*, non-culpable intent. Webb v.

- 14 -

Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963).  When it is equally plausible that a "reasonable hypothesis of innocence" explains the accused's conduct, evidence cannot be said to rise to the level of proof beyond a reasonable doubt, Haywood v. Commonwealth, 20 Va. App. 562, 567-68, 458 S.E.2d 606, 609 (1995), and the fact finder's rejection of that reasonable hypothesis is plainly wrong.

Here,  assuming the robbers' act of moving an infant from one room to another during the course of a robbery might, standing alone, provide sufficient circumstantial proof of intent to support a conviction for abducting the infant, the Commonwealth's evidence here, as recited by the majority, establishes more.  This evidence indicates that Clanton and his companions did not move the infant from Debryant Mabry's bedroom immediately after entering it, when they moved Simone Lewis.  Instead, the infant was moved to the room to which Simone had been taken only *after* Debryant had repeatedly said his daughter was "in here," in the bedroom where they were holding Debryant at gunpoint.  Further, the robbers could reasonably have believed that by taking the infant to Simone, they were simply moving her from her father's presence to her mother's, based on her father's request.[13]  Thus, although the evidence does not *compel* a finding that Clanton and his companions moved the infant at Debryant's request, one of several reasonable inferences flowing from the evidence, viewed in the light most favorable to the Commonwealth, is that the robbers did, in fact, move the infant solely as a result of Debryant's repeated references to the child's presence in the room rather than solely as a result of any intent

---

[13] Although the record indicates Simone was not the infant's mother, no evidence in the record provides any indication that Clanton or any of his companions knew this.  Robinson v. Commonwealth, 228 Va. 554, 558, 322 S.E.2d 841, 843 (1984) ("'[A] man cannot be influenced or moved to act by a fact or circumstance of which he is ignorant.'" (quoting Mullins v. Commonwealth, 113 Va. 787, 790, 75 S.E. 193, 195 (1912))).  Under the circumstances in which the robbers first found the infant—asleep in bed with Debryant and Simone—they might reasonably have concluded that the infant was Simone's child as well as Debryant's.

to facilitate the robbery, or as a result of some combination of culpable and non-culpable intents.[14]

Whether *Debryant intended* his statements to cause the robbers to move the infant to another room or to cease the attack is not dispositive of the issue of *what Clanton and his companions intended*. Whether moving the infant to another room served to protect her also is not dispositive. The burden was on the Commonwealth to prove beyond a reasonable doubt that Clanton acted with the intent to abduct the infant and not upon Clanton to prove he acted virtuously or with any other non-criminal intent. What I conclude *is* dispositive is that the evidence, viewed in the light most favorable to the Commonwealth, supported at least one reasonable hypothesis that was consistent with Clanton's innocence. Because I believe the trier of fact erred in arbitrarily rejecting that reasonable hypothesis of innocence, I would reverse and dismiss Clanton's conviction for abduction. Thus, I respectfully dissent.

---

[14] Among the multiple reasonable inferences flowing from the evidence is that Clanton and his companions acted with both intents—to respond to Debryant's repeated references to his daughter's presence in the room as well as to facilitate the robbery. However, this does not negate the fact that another reasonable hypothesis flowing from the evidence is that Clanton acted with a single, non-culpable intent.