COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Causey and Senior Judge Haley

JASON FRANKLIN MAXWELL

MEMORANDUM OPINION*
v.      Record No. 0448-22-2                          PER CURIAM
                                                     AUGUST 1, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Kimberley S. White, Judge[1]

(Jennifer T. Stanton, Senior Appellate Attorney, Indigent Defense
Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; John Beamer, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Jason F. Maxwell of felony eluding,

misdemeanor reckless driving, and driving on a suspended license, in violation of Code

§§ 46.2-817(B), -852, and -301(B). On appeal, he asserts that the evidence was insufficient to

support his conviction for felony eluding and that the trial court abused its discretion when it

sentenced him above the sentencing guidelines. After examining the briefs and record in this case,

the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly

without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.*

_____

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Honorable Kimberley S. White presided over the proceedings below. Now a
member of this Court, Judge White took no part in this decision.

*Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

On July 31, 2021, Sergeant Joey Adams was traveling northbound on L.P. Bailey Highway in Halifax County. As he arrived at the intersection of L.P. Bailey Highway and Volens Road, a white pickup truck traveling southbound on L.P. Bailey turned left in front of Sergeant Adams onto Volens Road. As the truck cleared the intersection a black Chevrolet Cavalier, later learned to be driven by Maxwell, entered the intersection causing Sergeant Adams to slow down to avoid a collision. As Maxwell traveled through the intersection, his tires spun. Sergeant Adams executed a u-turn and followed Maxwell southbound on L.P. Bailey Highway.

As Maxwell turned right onto Cody Road, Sergeant Adams observed gravel and dust fly into the air. When Sergeant Adams came to the turn, he observed that gravel had been thrown across the highway and that Maxwell was quite a distance away. Sergeant Adams activated his lights and sirens and accelerated to 90 miles per hour to initiate a traffic stop. Eventually, Sergeant Adams came within three car lengths of Maxwell and read the license plate to dispatch. Dispatch informed Sergeant Adams that the tag was possibly displayed on the wrong vehicle.

During the 28-minute pursuit that followed, which spanned 30 to 40 miles and entered Pittsylvania County, Sergeant Adams observed Maxwell disregard several stop signs, cross the double yellow line, pass two vehicles in a no passing zone, and reach speeds of almost 100 miles per hour. The speed limit on the roads Maxwell followed was between 45 and 55 miles per hour. Two other law enforcement vehicles, including one driven by Virginia State Trooper David Clark, joined Sergeant Adams during the pursuit.

While traveling on Route 761 in Pittsylvania County, Maxwell came upon a motorcyclist traveling in the same direction. Maxwell crossed a double yellow line and passed the motorcyclist while a truck pulling a trailer approached in the opposite lane of travel. Sergeant Adams slowed down to allow the truck to pass before he passed the motorcyclist. Sergeant Adams then noticed a sharp left curve ahead and braked. While entering the turn Sergeant Adams observed smoke and headlights on the right side of the highway 15 to 20 feet from the road. Maxwell had lost control of his vehicle and come to a stop facing the opposite direction in a residential yard.

Maxwell exited the vehicle's driver's side, ran towards the right side of the residence, and jumped a chain link fence. Trooper Clark pursued Maxwell and eventually tackled him in the residence's backyard.

On cross-examination, Sergeant Adams admitted that he did not document Maxwell's speed by radar. He further admitted that there were no marks on the road where Maxwell traveled across L.P. Bailey Highway. Sergeant Adams noted, however, that he took risks during the pursuit that he would not normally take to keep up with Maxwell. The Commonwealth then entered Maxwell's Department of Motor Vehicle transcript into evidence.

At the close of the Commonwealth's evidence, Maxwell moved to strike the charges. The trial court noted that "this conduct occurred . . . on very, very dark roads . . . where there are no street lights [sic] in residential sections . . . of the county." The court also noted that the roads involved were narrow country roads in hilly terrain and "where [there were] blind curves." The trial court found that Maxwell grossly disregarded the speed limit and completely crossed over the yellow line into the oncoming lane of travel on both the curves and the straightaways. Further, Maxwell disregarded stop signs, slowing just enough to execute the turn. Driving in this manner, the trial court reasoned, endangered Maxwell, the pursuing law enforcement officers, and anyone else on the road that evening. The trial court denied the motion to strike.

At the close of all the evidence, the trial court denied Maxwell's renewed motion to strike and convicted Maxwell of felony eluding, operating a motor vehicle with a suspended license, and reckless driving.

At the sentencing hearing, the trial court reduced, without objection, Maxwell's sentencing guideline points for the absence of prior criminal traffic convictions and prior felony adjudication. Over Maxwell's objection, the trial court added four points to Maxwell's sentencing guidelines based upon Trooper Clark's injury. The new sentencing guidelines ranged from one year, at the low end, to one year, five months, at the high end, with a midpoint of one year, three months.

Trooper Clark testified that he chased Maxwell as he was fleeing on foot. When he tackled Maxwell, Trooper Clark's shoulder slammed into the ground, breaking his humerus head and tearing his left labrum. His labrum was reattached, but the humerus could not be repaired surgically. Trooper Clark noted that the surgeon removed the lose bone fragments and cartilage, and the hole in his humerus head would eventually fill with scar tissue. He had regained 75 to 80% of his shoulder mobility, but will need a complete shoulder replacement in the future. The trooper described constant friction in his injured shoulder, and he had not been released from doctor's care. Trooper Clark noted that his immobilized arm affected his ability to parent his young children.

Maxwell testified he had been working on an invention when he was arrested. He admitted that he also had pending charges in Charlotte County at the time of his sentencing hearing. He apologized for Trooper Clark's injury and expressed a willingness to pay restitution. Maxwell acknowledged that he made poor decisions but denied that he drove the vehicle. He claimed that a third person, whom he refused to identify, was the culprit. He asserted that because he enabled the person to commit the crime, he himself was guilty.[2]

---

[2] The trial court noted that Maxwell did not present these arguments at trial.

On cross-examination, Maxwell admitted that his brother and mother each died in a car accident. He acknowledged that he has "Gangsta Crip" tattooed on his back but claimed that he was an inactive member and had retired from gang life.

In allocution, Maxwell apologized again to Trooper Clark and reiterated his willingness to pay restitution. Maxwell continued to claim that an unidentified person committed the crimes. He claimed that by "enabling the individual to break the law [he] broke the law." He then asked the court for leniency. The trial court sentenced Maxwell to 2 years and 18 months of active incarceration. Maxwell appeals.

ANALYSIS

I. Sufficiency of the Evidence

It is unlawful for anyone who has "received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, [to] drive[] such motor vehicle in a willful and wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person . . . ." Code § 46.2-817(B). Maxwell asserts that the evidence was insufficient to prove that he endangered the operation of a law-enforcement vehicle or another person under the statute. He notes that he was not intoxicated, did not veer into oncoming traffic, was not in a residential neighborhood, and did not crash his vehicle. Because no other driver had to execute evasive maneuvers to avoid him, he argues, he did not endanger another person as contemplated by the statute.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a

- 5 -

reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Under Code § 46.2-817(B), "[t]he object of the endangerment can be the driver himself, the police officer, or anyone else on the road that could be put at risk from the driver's eluding." *Coleman v. Commonwealth*, 52 Va. App. 19, 24 (2008); *see also Phelps v. Commonwealth*, 275 Va. 139, 142 (2008). To "endanger" is to "expose to danger, harm, or loss." *Webster's New World Dictionary* 448 (3d coll. ed. 1988); *The American Heritage Dictionary* 452 (2d coll. ed. 1982). "That the exposure to danger does not result in any actual harm is a welcome fortuity, but not a legal defense." *Coleman*, 52 Va. App. at 24.

Here, the evidence showed that Maxwell squealed his tires as he crossed in front of Sergeant Adams, who braked his vehicle to avoid colliding with Maxwell. After executing a u-turn and following Maxwell, Sergeant Adams activated his emergency lights and sirens and accelerated to 90 miles per hour to conduct a traffic stop. Maxwell disregarded Sergeant Adams's emergency lights and sirens for nearly half an hour while speeding at almost 100 miles per hour through dark and hilly country roads with blind curves. The speed limit on these roads was between 45 and 55 miles per hour. Maxwell also disregarded stop signs, crossed double yellow lines, and, at some points during the pursuit, traveled completely in the opposite lane of travel. At one point, Maxwell passed a motorcyclist in a no pass zone while a truck pulling a

trailer approached in the opposite lane of travel. The pursuit ended when Maxwell lost control of his vehicle, spun out, and came to a stop 15 to 20 feet from the road in front of a residence.

Considering these facts and circumstances, a reasonable finder of fact could conclude beyond a reasonable doubt that Maxwell's nearly half-hour-long evasion of the police endangered himself, the officers, and anyone else on the road. Accordingly, the evidence was sufficient to sustain Maxwell's conviction for eluding in violation of Code § 46.2-817(B).

## II. Imposition of Sentence

Maxwell contends that the trial court abused its discretion in determining his sentence. He argues that the trial court did not give significant weight to his mitigating factors of remorse, lack of prior violent crimes, the loss of both his parents and his brother, rejection of gang membership, and his military service. Maxwell further contends that the trial court abused its discretion by giving significant weight to Trooper Clark's injury and the nature of the crime. Maxwell argues that the sentencing guidelines already weighed these factors and that it was improper for the trial court to give them more weight than the sentencing guidelines.

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). It was within the trial court's purview to weigh appellant's mitigating evidence. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

"An abuse of discretion . . . can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; [or] when an irrelevant or improper

factor is considered and given significant weight." *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (embracing the Fourth Circuit's definition of abuse of discretion). Finally, an abuse of discretion can occur "when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Id.*

The record does not support Maxwell's claim that the trial court did not consider his mitigating evidence in fashioning a sentence. The trial court heard evidence that Maxwell was a former Marine who had lost a brother and his mother to car accidents. During his allocution, Maxwell apologized to Trooper Clark and reiterated he would pay restitution for Trooper Clark's medical injuries. Balanced against Maxwell's mitigating evidence, however, was the danger he imposed on the public on the night he drove recklessly and the lifelong injury he caused Trooper Clark. Thus, the record reflects that the trial court considered all the evidence presented, both mitigating and aggravating, before it imposed the challenged sentences.

Further, the standard sentencing guidelines "are not binding on the trial judge; rather, the guidelines are merely a 'tool' to assist the judge in fixing an appropriate punishment." *Belcher v. Commonwealth*, 17 Va. App. 44, 45 (1993). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du*, 292 Va. at 564 (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Here, appellant's sentences were within the ranges set by the legislature. Code §§ 46.2-817(B), -852, and -301(B).

CONCLUSION

We find that the evidence was sufficient to convict Maxwell of felony eluding and that the trial court did not abuse its discretion in sentencing Maxwell. Accordingly, we affirm the trial court's decision.

*Affirmed.*