# COURT OF APPEALS OF VIRGINIA

## Record No. 0110-25-2

RAESHAWN JUVON PETTUS, S/K/A
RAESHAWN JAVON PETTUS
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Beales, O'Brien and Ortiz

Opinion Issued May 5, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge Designate[1]

(Paul C. Galanides; Law Office of Paul C. Galanides, P.C., on brief), for appellant.

(Jason S. Miyares,[2] Attorney General; Ken J. Baldassari, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION
## PER CURIAM

The trial court convicted Raeshawn Juvon Pettus of one count of statutory burglary in violation of Code § 18.2-90, one count of robbery in violation of Code § 18.2-58, and two counts of using a firearm in commission of a felony in violation of Code § 18.2-53.1. The trial court sentenced Pettus to 48 years of incarceration, with 40 years suspended. On appeal, Pettus challenges only the sufficiency of the evidence to prove the robbery conviction, contending that the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Beverly W. Snukals presided over Pettus's bench trial.

[2] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

prosecution failed to prove that the money that was stolen was the same money that was recovered by the police at the scene of the crime.[3]

## BACKGROUND[4]

On September 18, 2020, Pettus, along with several other intruders, broke into a residence on Terminal Avenue in Richmond. Five men lived at this residence: Nelson Vasquez, his cousin Yorvin Cardenas-Vasquez, Marvin Rojas, Edwin Cardenas, and one other individual.

Earlier in the day, Vasquez and Rojas had been paid $1,200 or $1,300 in cash for two weeks of work. Vasquez spent about $200 of this money. Around 11:00 p.m. or 12:00 a.m. that night, Vasquez and Rojas were at a friend's apartment when they contacted a drug dealer to purchase crack cocaine. The drug dealer, along with Pettus, picked Vasquez and Rojas up and drove them back to the victims' residence on Terminal Avenue. At the residence, in the presence of the drug dealer and Pettus, Vasquez and Rojas produced the cash in their possession and paid $150 for the crack cocaine.

Around 3:00 a.m. or 4:00 a.m., several intruders broke down the door of the residence. Vasquez came down the stairs and saw three or four men walking around. One of these men "grabbed [Vazquez] by the neck, the collar, and threw [him] on the ground." Three of the men, including Pettus, had guns.

---

[3] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

[4] "On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,' the prevailing party below." *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

After Vasquez was thrown to the ground, Pettus pointed a gun at him and put his foot on Vasquez's face. Pettus told Vasquez not to move, while the other men searched Vasquez. Pettus demanded that Vasquez tell him where his money was. Vasquez saw one of the other intruders disconnecting the television, while the third intruder went upstairs.

Vasquez usually kept his money in his wallet, but on this particular night he left his money on the bed upstairs. When the third man came back downstairs, Vasquez saw him "counting [Vasquez's] money." Vasquez testified that he knew it was his money because "it was in 20s and that's how I got paid."

Rojas ran upstairs to try to get away. Rojas recognized the intruders as the people from whom they had purchased the crack cocaine and "the friends of the group that we bought from." One of Vasquez's roommates escaped and called the police. When the police arrived, Pettus and the other men were still inside of the house. The intruders tried "to hide or see if they could get out the window," but "they didn't know where things were." The police apprehended them and arrested them.

At trial, Vasquez testified that the only thing missing was the money that had been inside his wallet. He testified that the intruders had "left my empty wallet" with "[n]ot even one dollar." He further testified that he did not resist because the intruders had guns.

Vasquez's version of events was largely corroborated by testimony from Rojas, Cardenas-Vasquez, and Cardenas. Cardenas-Vasquez testified that he had been sleeping when he heard "running on the stairs" and then woke up to someone pointing a gun at him. The intruder demanded to know the location of the money, but Cardenas-Vasquez said he did not have any money. The intruder then hit Cardenas-Vasquez in the face. Cardenas-Vasquez turned over five dollars to the intruder before he was dragged downstairs.

Richmond Police Officer Robert Misegades testified at trial. Officer Misegades testified that he responded to a call for a burglary in progress at the Terminal Avenue residence. When he arrived, he saw a man on the roof, who was later identified as the man who had called the police. He further testified that when he and other officers went inside the house, they found two of the intruders, including Pettus, hiding upstairs in a "crawl space area" behind a door. The police took Pettus and the other intruder into custody. A third intruder fled out the back window and was arrested. The police recovered two firearms, one in the crawl space, and another under a mattress.

Officer Maureen Clinton testified regarding the money recovered from the intruders. Specifically, she testified that, when they searched Pettus, she thought "he had some currency on him," but she was not certain. She testified that one of the other intruders had "almost $900" on him but she did not know the exact amount. She testified that the money on this intruder included "20s, 10s, and 1s and I think a 50, as well."

After the Commonwealth rested, counsel for Pettus moved to strike the evidence, arguing that "there's been nothing that determined that [the money] was [Vasquez's]." The trial court denied this motion. At the conclusion of all of the evidence, Pettus renewed his motion to strike, which the trial court again denied. The trial court then convicted Pettus on all charges. Pettus was sentenced to 48 years, with 40 suspended.

ANALYSIS

On appeal, Pettus argues, "The Prosecution Failed to Prove Robbery because the Evidence was Insufficient to Identify the Currency Found in the Possession of a Co-Defendant as Currency Belonging to the Victim."

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (quoting *Commonwealth v.*

*Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (emphasis in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). As a result, it is for the finder of fact, and not the appellate court, to resolve potential inconsistencies in testimony. *Id.*

"Strict proof of the identity of the stolen articles is not required where the possession is unexplained and recent." *Hope v. Commonwealth*, 10 Va. App. 381, 384 n.1 (1990) (citing *Cook v. Commonwealth*, 214 Va. 686, 687-88 (1974)). *See Lewis v. Commonwealth*, No. 3064-01-1, slip op. at 9-10, 2002 Va. App. LEXIS 640, at *11-12 (Oct. 22, 2002) (holding that the defendant's possession of a similar amount of money in similar denominations as the currency missing from a restaurant, combined with his close proximity to the scene of the crime, allowed the trial court to reasonably infer that the money in his possession was taken from the business).

Pettus argues that the prosecution failed to prove that he robbed Vasquez because, even though the intruders were arrested at the scene of the crime, the evidence was insufficient to identify that the money found in the possession of the intruders was the same money as the currency taken from Vasquez. This argument is without merit. As courts in sister states have explained, "when the stolen property is money, exact identification of specific bills of currency is not required." *People v. Staples*, No. 208835, 1999 Mich. App. LEXIS 2778, at *4 (Nov. 30, 1999) (recognizing that such a requirement "would be absurd"); *see also People v. Cookson*, 439 N.E.2d 1033, 1036 (Ill. App. Ct. 4th Dist. 1982) (holding that "it was not necessary that the currency taken from the defendant be shown to be the exact currency taken in the robbery").

We therefore simply cannot say that the trial court was plainly wrong in finding that the evidence was sufficient to support Pettus's conviction for robbery. Vasquez testified that armed intruders—including Pettus—broke into the residence. Vasquez testified that Pettus personally pointed a gun at Vasquez, put his foot on Vasquez's face, and demanded to know where his money was. Vasquez further testified that he later saw one of the intruders coming down the stairs, where his money had been, counting $20 bills. When the police arrived at the residence, they arrested the intruders, including Pettus, before they could escape with the money—and recovered "almost $900" from one of them. The logical inference to be drawn from these facts is that at least some of the money in the possession of the intruders at the time of arrest was the same money that was stolen from Vasquez. *See Smith*, 296 Va. at 460 (quoting *Perkins*, 295 Va. at 327).

Pettus points to minor inconsistencies in the record as to the exact amount of money Vasquez had on the night of the robbery. It is true that the prosecution never provided testimony as to the exact amount of money recovered from the intruders. However, even if, as Pettus suggests, the police recovered less than the total amount of money stolen from Vasquez, this result would still have no bearing on whether Pettus robbed Vasquez. "It is immaterial that the quantity of goods possessed was less than the quantity stolen and charged in the indictment, for the fact-finder '. . . may infer the stealing of the whole from the possession of part.'" *Henderson v. Commonwealth*, 215 Va. 811, 813 (1975) (alteration in original) (quoting *Johnson v. Commonwealth*, 141 Va. 452, 456 (1925)).

## CONCLUSION

For all of the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*