# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Chief Judge Decker, Judge Friedman and Senior Judge Clements
Argued at Richmond, Virginia


JOSE JOAN MARTINEZ MARMOLEJO
                                              MEMORANDUM OPINION[*] BY
v.      Record No. 0912-24-2            CHIEF JUDGE MARLA GRAFF DECKER
                                                    AUGUST 5, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NEW KENT COUNTY
B. Elliott Bondurant, Judge

Charles E. Haden for appellant.

Jennifer L. Guiliano, Assistant Attorney General (Jason S. Miyares,
Attorney General; Lauren C. Campbell, Assistant Attorney General,
on brief), for appellee.


A jury found the appellant, Jose Joan Martinez Marmolejo, guilty of rape, forcible

sodomy (two counts), indecent liberties, solicitation by a communications system (two counts),

abduction, abduction with intent to defile, production of child pornography, reproduction of child

pornography, and possession of child pornography (six counts). He argues that his statutory

right to a speedy trial was violated and the evidence was insufficient to support his convictions.

Finding no error, we affirm the convictions.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

At about 7:00 a.m. on February 26, 2022, the appellant picked up eleven-year-old J.S. at her home in New Kent County, gave her $20 to buy snacks and a video game gift card at a 7-Eleven, and took her to a nearby motel.[2] At the motel they had vaginal and oral sex. The appellant was twenty-five years old and lived in North Carolina. He met J.S. through social media in mid-January 2022 and arranged to meet her in person after exchanging text messages with her.

Later in the morning of February 26, J.S.'s mother discovered she was missing and called the police. She had last seen J.S. the night before and did not give anyone permission to take her anywhere. The officers who responded to the home found a note in J.S.'s room that read: "I'll be back, if I don't leave, bad things can happen, I need a break."

The officers gave J.S.'s pillowcase to a police bloodhound to use as a "scent article," and the dog led them into the street before losing the scent. Based on other information they received, the officers drove to the Washington Burgess Inn in New Kent County. The police dog sniffed around the motel and alerted to two adjacent rooms. The officers knocked several times on the door of one of the rooms before the appellant answered. He initially claimed that he was alone but later admitted that a girl was in the bathroom. After he allowed the officers to enter the

_____

[1] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)).

[2] We use J.S.'s initials to protect her privacy. Parts of the record in this case were sealed, but this appeal necessitates unsealing relevant portions of the record to resolve the issues raised. Therefore, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

room, they identified J.S. as she came out of the bathroom. Her jeans were laying on one of the beds, and her bra was on the floor between the beds. An officer escorted her from the room.

The appellant provided his driver's license, which showed he was born in 1996. He consented to a search of the motel room. The officers found a cell phone and an iPad belonging to the appellant and a phone used by J.S. and owned by her mother. One of the beds in the room was "disheveled," and the other bed was "perfectly made." A deputy arrested the appellant and took him to the New Kent County Sheriff's Office where Detective Ryan Shobe interviewed him.

After confirming that he understood his *Miranda*[3] rights, the appellant said that he found J.S.'s profile on Instagram and exchanged text messages with her for about a month before he drove from North Carolina to meet her. He said he only knew her Instagram user name. Throughout the interview he denied knowing her age, saying she did not "look 11" and he thought she was in her teens, "maybe 15 plus."

The appellant told the detective that he arrived in New Kent County around 1:45 a.m., stopped at a gas station, and then rented the motel room for two nights. He later picked up J.S. at her house and drove to a 7-Eleven, where he gave her $20 to buy snacks and a Roblox video game gift card. Then they went to the motel, where they stayed until the police arrived.

The appellant said the original plan was to meet and "hang out," but the plan changed as they continued texting. He initially declined to discuss what occurred in the motel room. He admitted making a video and sending it to J.S. at her request, but he did not describe the content of the video.

Detective Shobe paused the interview to get written consent from J.S.'s mother to search J.S.'s phone. In response to J.S.'s text asking the appellant for "that video . . . [o]f me," he sent

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

her a video depicting penis to vagina sexual intercourse. The timestamp on the video indicated it was created at 10:02 a.m. on February 26, 2022, and sent at 10:19 a.m. When the detective confronted the appellant with the video, he admitted he was the man in the video. He said that he had sex with J.S. multiple times throughout the morning and they performed oral sex on each other.

Several days later Detective Shobe found two more videos in the camera roll on J.S.'s phone that showed they also were created on February 26, 2022. One video, timestamped 11:01 a.m., depicted a female giving fellatio to a male. Shobe identified the female as J.S. The other video, timestamped 9:52 a.m., depicted a male giving cunnilingus to a female. Shobe identified the male as the appellant. The detective also identified the background in both videos as matching the motel room.

Detective Shobe obtained a search warrant for the appellant's phone because he refused to supply the passcode. After receiving the phone from Shobe, Virginia State Trooper Thomas Cashin used specialized software to extract data "contained within" the phone and create a report that he provided to the detective. Cashin testified that he extracted data "from the device itself" and could not "manipulate the data on the device." The data extraction report contained an Apple Maps summary, which confirmed the timeline that the appellant had provided to Detective Shobe.

While reviewing the video section of the extraction report, Shobe saw six videos "that appeared to depict under-age children and adolescen[ts] either engaged in sexual activity or undressing, exposing their genitals and breasts." According to the report, the videos were "in the video section of [the appellant's] device" and "were on the phone, basically the hard drive of the phone." The Commonwealth played all the videos for the jury.

- 4 -

The officers obtained a search warrant for the appellant's car, which was parked at the motel. Inside the car, they found a gas station receipt dated February 26, 2022, at 1:44 a.m., a 7-Eleven receipt dated the same day at 7:14 a.m. for snacks and a Roblox gift card, and unopened condoms on the passenger-side floorboard and in the glove compartment.

Detective Shobe also obtained a search warrant for the appellant's Instagram records. The warrant was served on Instagram's parent company, Meta Platforms, Inc., which complied with the request. Those records showed that the appellant and J.S. first began messaging each other in mid-January 2022. The messages became sexually explicit on February 23, 2022. On February 25, 2022, the appellant sent J.S. a string of sexual messages and then told her to "[b]e a good girl in school darling." When she complained about her school bus driver, he said that she needed to "stop riding the bus" and "start riding [his] dick." He proposed having sex with J.S. while her parents were away, noting "[b]ut you're too scared to do it aren't you sweetie." J.S. asked the appellant how old he was, and he told her to guess. She first guessed 16, then 17, then 18, and when the appellant revealed that he was 25, she responded "Babeeeee . . . Ur like so much older th[an] meee."

J.S. revealed that she lived in Virginia, and the appellant proposed driving to Virginia "right now if it's that close." J.S. replied, "Right now?" He said that he meant "when we can." He stated that he could "come when [her] parents are away." She said that she "could sneak out," and he responded, "Ok let's do it." J.S. asked if they had "to have sex," and the appellant responded that he wanted to do so. J.S. said, "What if I'm scared to" and "just want you to kiss me and like stuff like that." The appellant replied, "Then we can wait and just do that."

After J.S. left the motel on February 26, 2022, she was seen by sexual assault nurse examiner Bethany Porter. J.S. told Porter that she and the appellant "planned to hang out" and she "was just going to get away from home." She said that the appellant had kissed her but

denied all other sexual contact. According to J.S., they simply "watched cartoons and he fell asleep." Porter did not observe any injuries. She conducted a PERK examination, during which she obtained DNA samples from J.S.'s vagina and cervix.[4]

The appellant consented to providing his DNA. Because there was a limited amount of male DNA in the samples taken from J.S.'s vagina and cervix and the crotch area of her underpants, the samples were analyzed only for male-specific DNA by examining the Y chromosome. That analysis showed the appellant could not be eliminated as a contributor.

The Commonwealth charged the appellant with abduction, sex crimes involving children, and multiple child pornography offenses.

The trial was set initially by the agreement of counsel for November 14, 2022. The case was continued several times at the appellant's request or with his agreement. The appellant moved to dismiss the indictments on speedy trial grounds on January 18, 2024, and the trial court denied the motion.

J.S. testified at trial that the appellant penetrated her vagina with his penis and that they performed oral sex on each other. She acknowledged that the three videos of sex acts found on her phone were recorded by the appellant and depicted him and herself. She said that she "didn't think he was going to do anything" and "thought [they] were just going to go hang out like he told [her]." According to J.S., she told him at the motel that she was eleven years old and thought she had also told him her age on Instagram before he drove to Virginia. She did not remember what she had told Porter at the hospital but testified that she had been "scared" and "didn't know what to say."

---

[4] A PERK, or "physical evidence recovery kit," is a standardized kit for collecting physical evidence and information from an alleged victim of sexual assault.

In response to the appellant's motion to strike, the trial court dismissed the charges of object sexual penetration and aggravated sexual battery. The jury found the appellant not guilty of displaying child pornography, financing child pornography, and abducting J.S. with the intent to produce child pornography. The jury found him guilty of the remaining sixteen charges. The court sentenced the appellant to three life sentences plus 210 years' incarceration, with 145 years suspended.

ANALYSIS

The appellant argues he was denied his statutory right to a speedy trial and that the evidence was insufficient to support his numerous convictions.

I. Speedy Trial

A. Factual Background

The appellant was arrested on February 26, 2022, and remained in custody until his trial on February 8, 2024. His original charges were nolle prossed on July 15, 2022, and he was directly indicted on July 18, 2022, for twelve offenses.[5] He was arrested on these charges on July 22, 2022. The trial court appointed counsel on July 26, 2022, and scheduled a status hearing for August 8, 2022. At the hearing, the court set the trial for November 14, 2022, "[b]y agreement of counsel."

On September 19, 2022, the Commonwealth charged the appellant with four additional offenses.[6] On October 24, 2022, the prosecutor told the court that "the parties ha[d] agreed to change" the trial date to a status hearing. The appellant requested a jury trial on November 14,

_____

[5] These offenses were: rape, possession of child pornography, solicitation by communications system (two counts), object sexual penetration, aggravated sexual battery, forcible sodomy, display of child pornography, indecent liberties, abduction, reproduction of child pornography, and production of child pornography.

[6] These offenses were: forcible sodomy, finance child pornography, abduction with intent to defile, and abduction with intent to produce child pornography.

2022, and the court continued the trial to March 30, 2023, again "[b]y agreement of counsel." On November 21, 2022, the appellant was indicted on five more charges of possession of child pornography. He was arrested on the September and November indictments on February 10, 2023.

On March 20, 2023, the trial court granted the appellant's counsel's motion to withdraw, appointed new counsel, and continued the case to April 10, 2023, for a status hearing "[b]y agreement of counsel." The appellant moved for a psychosexual evaluation on April 5, 2023. The court granted that motion and continued the case to June 26, 2023, at the appellant's request. Delays in completing the psychosexual evaluation prompted the court to grant two more continuances at the appellant's request. On September 18, 2023, the court set the trial for February 8, 2024, "[b]y agreement of counsel."

On January 18, 2024, the appellant moved to dismiss the indictments, alleging that his statutory right to a speedy trial had been violated.[7] The court denied the motion, finding that only the 115 days from July 22, 2022, to November 14, 2022, could be attributed to the Commonwealth because the appellant requested or joined in every continuance after the original trial date of November 14, 2022. The trial began on February 8, 2024.

### B. Standard of Review and Principles of Law

"[A] statutory speedy trial challenge presents a mixed question of law and fact." *Ali v. Commonwealth*, 75 Va. App. 16, 29 (2022) (alteration in original) (quoting *Young v. Commonwealth*, 297 Va. 443, 450 (2019)). This Court "gives deference to the trial court's factual findings but reviews legal issues *de novo*, including questions regarding the proper construction of a statute." *Id.*

---

[7] The appellant did not allege a violation of his constitutional right to a speedy trial.

"Code § 19.2-243 provides specific time limits 'within which an accused must be tried, absent tolling or other statutory exceptions.'" *Osman v. Commonwealth*, 76 Va. App. 613, 657 (2023) (quoting *Brown v. Commonwealth*, 75 Va. App. 388, 406 (2022)). If the defendant is indicted without a preliminary hearing in the general district court, the five-month period runs from the date of the indictment. Code § 19.2-243. But if the defendant is not arrested until after the indictment, the five-month period runs from the date of his arrest. *Id.* "Th[e] five-month requirement equates 'to 152 and a fraction days.'" *Osman*, 76 Va. App. at 657 (quoting *Ballance v. Commonwealth*, 21 Va. App. 1, 6 (1995)). Code § 19.2-243 sets forth certain circumstances that toll speedy trial, including continuances requested by or agreed to by the defendant. The Commonwealth bears the burden to prove that a delay was based on one of the enumerated reasons "or on [the accused's] waiver, actual or implied, of his right to be tried within the designated period." *Wallace v. Commonwealth*, 65 Va. App. 80, 89 (2015) (alteration in original) (quoting *Powell v. Commonwealth*, 29 Va. App. 745, 748 (1999)), *aff'd*, 292 Va. 1 (2016).

### C. Application of the Law to this Case

The appellant points out that more than five months passed from his arrest on February 26, 2022, to the trial on February 8, 2024. He appears to attribute the entire time period to the Commonwealth in order to support his speedy trial challenge. His argument fails because it is based on an incorrect date and ignores the continuances requested or agreed to by the appellant.

The charges on which the appellant was arrested on February 26, 2022, were nolle prossed on July 15, 2022. He was directly indicted on twelve offenses on July 18, 2022, and arrested on them on July 22, 2022. Therefore, the relevant date for those twelve charges is July 22, 2022. Absent tolling or exceptions, the trial had to commence by December 21, 2022, to comply with the requisite time limits for speedy trial. *See* Code § 19.2-243.

On August 8, 2022, the parties agreed to schedule the trial for November 14, 2022, which was within five months of the appellant's arrest. On November 14, 2022, the parties jointly agreed to continue the trial until March 30, 2023. Because the appellant agreed to continue the case outside the speedy trial period, the time from November 14, 2022, to the March 30, 2023 trial date was tolled for speedy trial purposes. *See Young*, 297 Va. at 452 (holding that a defendant's failure to object to a trial date set outside the speedy trial period "is an acquiescence . . . and constitute[s] a continuance of the trial date under Code § 19.2-243(4)" (quoting *Heath v. Commonwealth*, 261 Va. 389, 394 (2001))).

The appellant was charged with additional offenses on September 19, 2022, and on November 21, 2022. He was arrested on those charges on February 10, 2023. Counsel was appointed, and the charges were set for trial on March 30, 2023, by agreement of counsel. On March 20, 2023, however, the trial court granted defense counsel's motion to withdraw, and the March 30 trial date was cancelled. Again, by agreement of the parties, the case was continued for a status hearing on April 10, 2023. All subsequent continuances were either at the appellant's request or with his agreement.

Regarding the first twelve charges, the trial court determined that only the 115 days from July 22, 2022, to November 14, 2022, counted against the Commonwealth. *See Osman*, 76 Va. App. at 658 (stating that the time from the arrest to the initial trial date generally counts against the Commonwealth). For the nine additional charges, the court concluded only the days from February 10, 2023, to March 30, 2023, counted against the Commonwealth. The court found all of the subsequent delays were not attributable to the Commonwealth because the appellant either requested or agreed to the continuances. *See* Code § 19.2-243(4) (speedy trial is tolled if the accused or his counsel request a continuance, concur in the Commonwealth's motion for a continuance, or fail "to make a timely objection" to the Commonwealth's motion).

- 10 -

Although the appellant claims that "he himself did not consent to a waiver of his statutory right to a speedy trial," "[t]he statute makes clear that the actions of either 'the accused *or his counsel*' may constitute a waiver of the accused's right to invoke the statute's time limitations." *McCray v. Commonwealth*, 44 Va. App. 334, 342 (2004).

The record shows that the appellant was tried on all the charges within 152 and a fraction of a day.[8]  Accordingly, the trial court correctly found that the appellant was not denied his statutory right to a speedy trial.

## II.  Sufficiency of the Evidence

The appellant challenges the sufficiency of the evidence to sustain his convictions for abduction, abduction with intent to defile, and possession of child pornography.[9]

## A.  Standard of Review

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024).  "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly

---

[8] Even assuming February 26, 2022, was the relevant arrest date for the first set of indictments, the Supreme Court's COVID-19 emergency orders tolled the speedy trial period from March 16, 2020, until June 22, 2022.  *See Ali v. Commonwealth*, 75 Va. App. 16, 30-33 (2022); Fortieth Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency (Va. May 27, 2022).  The period from June 22, 2022, to November 14, 2022, is 145 days, still fewer than 152 and a fraction of a day.

[9] On brief, the appellant challenged the sufficiency of the evidence of all of his convictions and argued that the ends of justice exception to Rule 5A:18 should be applied to convictions that were not preserved for appeal.  But at oral argument he limited his argument to the convictions for abduction and abduction with intent to defile that were preserved.  Accordingly, we address only those two convictions, as well as the five convictions for possession of child pornography that were also preserved.  We do not consider whether the ends-of-justice exception applies to the other convictions.
The Court further notes that the appellant contested on brief his conviction for aggravated sexual battery, but the trial court dismissed that charge on the appellant's motion to strike.  Therefore, that issue is not before us.  *See Lienau v. Commonwealth*, 69 Va. App. 254, 274 (2018), *aff'd upon rehearing en banc*, 69 Va. App. 780 (2019).

wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). The "appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams*, 278 Va. at 193). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### B. Sufficiency of the Evidence Supporting Convictions for Abduction and Abduction with Intent to Defile.[10]

The appellant was convicted of violating Code § 18.2-47(A), which provides that a person is guilty of abduction if he, "by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge."[11] Code § 18.2-47(A). He also was convicted of violating Code § 18.2-48(ii), abduction with intent to defile. The appellant

---

[10] The "distinguishing feature" of abduction and abduction with intent to defile is the defendant's "specific intent" when committing the offenses. *McKinley v. Commonwealth*, 217 Va. 1, 4 (1976). Neither the appellant nor the Commonwealth questioned at trial or on appeal whether the two abduction convictions violated double jeopardy, and this Court will not consider the issue sua sponte. *See id.* (declining to consider the effect of a variance between the indictment and the proof presented at trial because the defendant had not objected at trial or assigned error to that point).

[11] When the appellant committed the offense in 2022, it was a Class 5 felony. Code § 18.2-47(C) was amended effective July 1, 2023, to make abducting a minor a Class 2 felony. *See* 2023 Va. Acts ch. 400. Abducting someone "with intent to defile" under Code § 18.2-48 is also a Class 2 felony.

argues, as he did at trial, that J.S. went with him willingly, negating the "force, intimidation, or deception" element of his convictions.[12] His challenge to the evidence is both factually and legally flawed.

"The abduction statute, by its plain language, does not require that force, intimidation or deceit be directed at the person being seized or taken." *Clanton v. Commonwealth*, 53 Va. App. 561, 573 (2009) (en banc). In fact, the abductee need not even be aware of the force, intimidation, or deception and need not resist it. *Id.* at 573-74. The appellant argues that *Clanton* is distinguished from his case because the victim of the abduction in *Clanton* was a baby, not an eleven-year-old girl. But the holding is not limited to infants. Rather, the Court concluded that the abduction statute "clearly envisions the situation in which a child or some other person incapable of resistance is taken or withheld from another." *Id.* at 574. Otherwise, "children . . . would not be protected by the statute if they did not resist in any manner or smiled as they were taken from their beds." *Id.* (quoting *Stancil v. State*, 553 A.2d 268, 273 (Md. Ct. Spec. App. 1989)).

J.S. was eleven years old.[13] Her mother testified that she did not allow anyone to take J.S. anywhere. The appellant suggested in his text messages to J.S. that he come to her house when her parents were away, and he knew from their text messages that she was sneaking out of

---

[12] This is the only element the appellant challenges on appeal.

[13] Although the appellant claimed throughout the interview with Detective Shobe that he did not know J.S.'s age and believed her to be a teenager whose parents allowed her to go out at night, a reasonable jury could conclude that he was "lying to conceal his guilt." *Newsome v. Commonwealth*, 81 Va. App. 43, 55 (2024) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)). The Instagram messages between the appellant and J.S. belie his statements, as J.S. told him she "could sneak out" to be with him and that he was "so much older" than she was. Additionally, J.S. complained in a text message she sent to the appellant that she had hurt herself "[a]t recess" on the "monkey bars." The jury certainly could have reasonably concluded that "[i]t stretches credulity beyond the breaking point" to believe that the appellant thought J.S. was a teenage girl. *Shaw v. Commonwealth*, ___ Va. ___, ___ (Apr. 17, 2025).

her house to meet him. J.S. testified that she thought that she and the appellant "were just going to hang out like he told [her]."[14] When she expressed some hesitation in her text messages about having sex, suggesting instead they "kiss" and "stuff like that," the appellant responded, "[t]hen we can wait and just do that." In addition, the appellant did not open the motel room door immediately when the police knocked, and he initially lied, saying that he was alone. J.S. came out of the bathroom after the deputies entered the motel room. In short, there was sufficient evidence that the appellant used deception to transport and conceal J.S., and the trial court did not err by denying the motion to strike the abduction charges.

### C. Sufficiency of the Evidence Supporting Convictions for Possession of Child Pornography.[15]

Possession of child pornography is a Class 6 felony. Code § 18.2-374.1:1(A). Trial counsel argued that he did not possess five of the child pornography videos in Virginia because he claimed that they originated from a search warrant to Meta "outside the Commonwealth" and were "on an account, not on the phone." The appellant makes the same argument on appeal, but the argument does not accurately reflect the evidence presented at trial.

---

[14] J.S.'s credibility was for the jury to determine, as it had "the unique opportunity to observe [her] demeanor" as she testified. *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)); *see Nelson v. Commonwealth*, 73 Va. App. 617, 622 (2021). Contrary to the appellant's assertion, J.S.'s trial testimony was not incredible simply because it differed from her comments to the forensic nurse examiner. *See Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010). "If the trier of the facts sees fit to base the verdict upon [the witness's] testimony there can be no relief in the appellate court." *Id.* at 718-19 (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)).

[15] The appellant argued in his motion to strike that the evidence did not support five of his possession charges, but it is less clear that he makes that argument on appeal. His brief merely states that trial "counsel made other arguments during the motion to strike" and then reproduces the arguments verbatim. He provides no additional analysis or legal authority. *See* Rule 5A:20(e). We assume for the purpose of this appeal that his brief sufficiently adopted trial counsel's argument, but we reiterate that Rule 5A:20(d) directs that "[a]ny quotation from the record should be brief."

Detective Shobe obtained the *Instagram* records from Meta, which is Instagram's parent company. Those records were the text messages between the appellant and J.S. The child pornography videos were found on the appellant's phone, which was password protected. Using specialized software to extract data contained within the phone itself, Virginia State Trooper Thomas Cashin created a report, which he shared with Shobe. According to the report, the videos were in the video section of the phone, "basically [on] the hard drive of the phone." The phone was recovered from the motel room in Virginia where the police located the appellant. From this evidence the trier of fact could conclude that the videos were possessed by the appellant in Virginia. Accordingly, there was sufficient evidence to support the convictions for child pornography.

CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*